Henry C. Wang (SBN 196537)
Email: hwang@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Michael A. Garabed (SBN 223511)
Email: mgarabed@reedsmith.com
Karen Wan (SBN 248542)
Email: kwan@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

*Attorneys for Plaintiff*
PINKBERRY, INC.

FILED
2008 SEP 10 PM 3:14
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINKBERRY, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>PEACHBERRY YOGURT, INC. d/b/a PEACHY YOGURT and PEACHBERRY YOGURT, a California corporation; and MIRA KIM, an individual,<br><br>Defendants. | Case No. **CV08-05927 (FFMx)**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. **STATE BREACH OF CONTRACT**<br>2. **FEDERAL TRADEMARK INFRINGEMENT;**<br>3. **FEDERAL UNFAIR COMPETITION;**<br>4. **FEDERAL FALSE DESIGNATION OF ORIGIN;**<br>5. **STATE UNFAIR COMPETITION;**<br>6. **STATE INJURY TO BUSINESS REPUTATION; AND**<br>7. **UNJUST ENRICHMENT** |

Plaintiff Pinkberry, Inc. ("Pinkberry") for its Complaint against Defendants Peachberry Yogurt, Inc. d/b/a Peachberry Yogurt and Peachy Yogurt ("Peachberry") and Mira Kim (collectively, "Defendants") alleges as follows:

## JURISDICTION AND VENUE

1. This is a complaint for injunctive relief and damages based on trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. Section 1051 *et seq.*, as amended (hereinafter "Lanham Act"), as well as related state law claims.

2. This Court has subject matter jurisdiction over this action under the Lanham Act, 15 U.S.C. § 1121; 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights and trademarks); and the doctrines of ancillary and pendant jurisdiction.

3. This Court has personal jurisdiction over Defendants because they reside in and or maintain a place of business and conduct business in the State of California.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and Defendants were and are subject to personal jurisdiction in this district at the time the action was commenced.

## PARTIES

5. Pinkberry is, and at all times relevant hereto has been, a corporation organized and existing under the laws of the State of California, having a place of business at 6310 San Vicente Boulevard, Suite 100, Los Angeles, California 90048. Pinkberry's primary line of business is the sale of frozen yogurt with optional toppings that include, among other things, fresh fruit, cereals and nuts, as well as smoothies and shaved ice (the "Pinkberry Products") under the distinctive Pinkberry

branding. Pinkberry operates stores throughout Los Angeles and elsewhere within this district as well as in interstate commerce.

6. On information and belief, Defendant Peachberry is, and at all times relevant hereto has been, a California corporation, having places of business at 325 The Promenade North, Long Beach, California and 1425 Artesia Boulevard, Unit 5, Gardena, California. Peachberry's primary line of business is the sale of frozen yogurt with optional toppings that include, among other things, fresh fruit, cereals and nuts, as well as smoothies and shaved ice, which deliberately imitates Pinkberry's highly distinctive branding.

7. Defendant Mira Kim is an individual who, on information and belief, at all times relevant hereto, resides within the venue of the Central District of California and is Peachberry's president and sole shareholder. On information and belief, at times relevant herein, Ms. Kim has been an owner and a person who controls Peachberry.

8. On information and belief, at all times relevant to the allegations in the Complaint, each defendant was the alter-ego, representative agent, employee, servant, partner and/or co-conspirator of each of the other Defendants and/or is in some other manner legally liable for the conduct and damages at issue in this action and was acting within the course and scope of one or more of such relationships and with the direct or implied knowledge, consent and/or ratification of each of the other Defendants.

## SUMMARY OVERVIEW OF COMPLAINT

9. Much the way that Apple Computers revolutionized the computer industry, raising the design standards and operating systems of the previously staid "beige box" computer market, Pinkberry has revolutionized the yogurt business by offering a product selection and consumer experience that are uniquely Pinkberry. Since its opening, Pinkberry has been featured in numerous national publications such

as Time, Fortune, Los Angeles Times, New York Times, and Reuters, and has been the subject of countless internet blogs. *See*, true and correct copies of a sampling of articles discussing Pinkberry attached hereto as **Exhibit "A"** and incorporated by reference. These national publications have recognized the unique and highly distinctive look and feel of Pinkberry stores, noting, for example, that Pinkberry was responsible for "help[ing to] revive the sagging frozen yogurt industry"[1] and "develop[ing] a look that helped create a cult factor."[2] Among many of its other acclaims and accolades, *The Los Angeles Times* has called Pinkberry "a phenomenon, creating four-times-a-week addicts and spawning celebrity devotion, along with a chorus of imitators..."[3] More recently, *The Los Angeles Times* opinion section made the tongue-in-cheek suggestion that the Los Angeles Coliseum should be renamed "Pinkberry Coliseum."[4] Indeed, Pinkberry's popularity, success, and fame in the yogurt business are unparalleled. Pinkberry was even showcased in an American Express national television advertisement. *See* true and correct copies of the American Express television advertisement stills, attached hereto as **Exhibit "B"** and incorporated by reference.

10. Pinkberry's success has been noted by its competitors and would-be competitors, including Defendants. On information and belief, Defendants' branding is a deliberate imitation of the Pinkberry branding and was implemented to build market share and a customer base by exploiting Pinkberry's renowned trade name and trademarks and wrongfully trading upon Pinkberry's reputation and goodwill.

11. Defendants have sought to profit from Pinkberry's success by using their highly similar PEACHBERRY trademarks (the "PEACHBERRY Marks") to market

---

[1] Hwang & Lee, *Simple by Design*, TIME MAGAZINE, March 12, 2008.
[2] Boyle, *Starbucks Founder Bites Into Pinkberry*, FORTUNE, October 16, 2007.
[3] Menn, *Welcome Jolt for Pinkberry*, LOS ANGELES TIMES, October 16, 2007
[4] Zirin, *The Pinkberry Coliseum*, LOS ANGELES TIMES, June 29, 2008

1  and sell products that are identical to the Pinkberry Products, thereby infringing
2  Pinkberry's registered trademarks, service marks, and trade name (collectively, the
3  "PINKBERRY Marks").

4  12. In April 2007, Pinkberry demanded that Defendants cease and desist their
5  infringement. Shortly thereafter, Pinkberry and Defendants entered into a settlement
6  agreement, whereby Defendants agreed, among other things, to stop using the
7  PEACHBERRY Marks. Unfortunately, Defendants have breached their agreement
8  and continue to use the infringing PEACHBERRY Marks, necessitating this lawsuit.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**A. Pinkberry's Creation and First Use of Its PINKBERRY Trademarks, Service Marks and Trade Name**

13. Commencing in or about January of 2005, Pinkberry created, developed and began marketing and selling the Pinkberry Products through its distinctive Pinkberry restaurants.

14. Since approximately January of 2005, Pinkberry has been using and is currently using its PINKBERRY Marks in connection with the marketing and sale of its Pinkberry Products, restaurants and related products and services. Pinkberry owns all rights in and to the federal registrations for the following PINKBERRY Marks, each of which is valid and subsisting:

| TRADEMARK | REG. NO. | ISSUE DATE | GOODS AND SERVICES |
|---|---|---|---|
| PINKBERRY | 3,302,143 | October 2, 2007 | Frozen yogurt; frozen yogurt based dessert, combined with fruit, nuts, cereal and shaved ice and rice cakes; and smoothies |
| PINKBERRY | 3,460,697 | July 8, 2008 | Restaurant services; restaurants; take-out restaurant services, café-restaurants; fast-food restaurants |
| Stylized Leaf and | 3,461,027 | July 8, 2008 | Express restaurant services, |

| | | | |
|---|---|---|---|
| Berry Swirl Design | | | food kiosk services, and carry-out restaurant services featuring frozen yogurt-based desserts, frozen dairy desserts, smoothies and shaved ice |
| PINKBERRY & Stylized Leaf and Berry Swirl Design | 3,460,702 | July 8, 2008 | Restaurant services; restaurants; take-out restaurant services; café-restaurants; fast-food restaurants |

*See*, true and correct copies of those registrations attached hereto as **Exhibits "C"** through **"F"** and incorporated by reference.

15. Since Pinkberry opened its first restaurant in the United States in or about January of 2005, its Pinkberry Products, restaurants and related products and services services have prominently featured the PINKBERRY Marks to identify them and to identify Pinkberry as their source.

16. Pinkberry has expended substantial time, money, and effort in promoting its Pinkberry Products, restaurants and related products and services through the use of its PINKBERRY Marks and in enforcing its rights in its PINKBERRY Marks throughout the United States.

17. By virtue of Pinkberry's investments, the PINKBERRY Marks have become associated in the minds of consumers and in the minds of the general public with Pinkberry and have become assets of substantial value to Pinkberry and symbols of its quality products and valuable goodwill. As a result of its efforts and success, in less than three (3) years, Pinkberry has expanded from one location in West Hollywood, California to over 60 locations in the United States, with current plans to continue to expand nationally and to expand globally.

18. Since January 2005, the Pinkberry Products, restaurants and services, as identified by the PINKBERRY Marks, have been widely used and recognized in the United States. *See e.g.* Hwang & Lee, *Simple by Design*, TIME MAGAZINE (3/12/08)

(describing Pinkberry's successes) and other articles attached hereto as **Exhibit "A"** and incorporated by reference.

### B.   Defendants' Unlawful Conduct

19.   On information and belief, since in or about January 2007, Defendants have operated at least one restaurant in which they sell the same products as the Pinkberry Products under the confusingly similar PEACHBERRY Marks. *See* true and correct copies of Defendants' PEACHBERRY Marks attached hereto as **Exhibit "G"** and incorporated by reference.

20.   Defendants' use of the PEACHBERRY Marks in the promotion, advertising and sale of directly competitive frozen yogurt products and services constitutes the use in commerce of colorable imitations, copies and reproductions of the PINKBERRY Marks, is deceptively and confusingly similar to Pinkberry's use of the PINKBERRY Marks for identical products, and is likely to cause confusion, mistake, or deception in the minds of the public.

21.   Pinkberry has not consented to, sponsored, endorsed, or approved Defendants' use of the PINKBERRY Marks in connection with any of Peachberry's products or services.

22.   Defendants' acts of improper use and promotion of the PINKBERRY Marks are likely to cause confusion or mistake in the minds of consumers as to the sponsorship, endorsement, association, or approval of Peachberry's products and services by Pinkberry. Likelihood of confusion is and will only be exacerbated by the fact that Peachberry's products and services are directly competitive with and/or highly related to Pinkberry's products and services. Peachberry's and Pinkberry's products are likely to be purchased by the same types of consumers, advertised and promoted in the same and/or similar advertising channels, and marketed and sold in similar retail establishments.

23.   On information and belief, the foregoing actions of Defendants have been

knowing, deliberate, willful, and in utter disregard of Pinkberry's rights.

24. Defendants' unlawful activity results in irreparable harm and injury to Pinkberry. Among other harms, it deprives Pinkberry of its absolute right to determine the manner in which its image is presented to the general public through its products and services; deceives the public as to the origin and sponsorship of such products and services; wrongfully trades upon, and cashes in on, Pinkberry's reputation and exclusive rights in its trademarks; and irreparably harms and injures Pinkberry's business reputation. As a direct and proximate result of Defendants' conduct set forth above, Pinkberry has been injured and damaged in an amount to be proven.

25. Defendants' conduct is continuing, and will continue, unless enjoined by the Court.

26. Unless Defendants are enjoined from engaging in the infringing conduct described above, Pinkberry will suffer irreparable injury and further damage. Thus, it would be difficult to ascertain the amount of compensation which could afford Pinkberry adequate relief for the acts of Defendants present and threatened, and Pinkberry's remedy at law is not adequate to compensate for said harm and damage.

C. **Defendants Breached Their Promise To Discontinue Their Infringing Conduct**

27. In or about April of 2007, Pinkberry learned that Defendants were using the PEACHBERRY Marks without authorization from Pinkberry in the promotion and sale of directly competitive frozen yogurt products not supplied by Pinkberry and of Defendants' restaurants and related products and services. Pinkberry immediately demanded in writing that Defendants cease and desist all use of the PEACHBERRY Marks.

28. On June 1, 2007, Pinkberry and Defendants entered into a settlement agreement (the "Agreement"), whereby Defendants agreed to cease and desist all use

of the PEACHBERRY Marks. A true and correct copy of the Agreement is attached hereto as **Exhibit "H"** and incorporated by reference.

29. Specifically, the Agreement provides as follows:

    a. That Defendants agree to stop any and all advertisements, coupons and any other promotional materials bearing any of the PEACHBERRY Marks or any confusingly similar name or logo by midnight on June 30, 2007;

    b. That Defendants agree to stop using any and all signage, décor, and banners bearing or featuring any of the PEACHBERRY Marks or any confusingly similar name or logo by midnight on June 30, 2007;

    c. That Defendants agree to replace all PEACHBERRY Marks with a new name and logo that are not confusingly similar to any of the PINKBERRY Marks by July 1, 2007;

    d. That Defendants acknowledge and agree that PINKBERRY Marks are valid, enforceable and owned by Pinkberry and agree never to challenge their validity, enforceability or ownership before any state or federal court.

    e. That Defendants acknowledge and agree that their use of the PEACHBERRY Marks or any confusingly similar name or logo infringes on Pinkberry's statutory and common law rights in the PINKBERRY Marks, causing Pinkberry irreparable harm for which it has no adequate remedy at law;

    f. That in the event that any of the Defendants breach any terms of the Agreement, Defendants agree to pay Pinkberry liquidated damages in the amount of Five Hundred Dollars ($500) per day and reasonable attorneys' fees and costs incurred in the enforcement of the Agreement;

    g. That in the event Defendants breach any terms of the Agreement, in addition to liquidated damages, Pinkberry may seek all available remedies in law or in equity, including injunctive relief; and

    h. That the Agreement is binding on, among others, Peachberry's successors, affiliates, assignees, partners, directors, shareholders, employees, officers,

and investors.

30. Despite entering into the Agreement with Pinkberry with full knowledge of Pinkberry's trademark rights, Defendants have used and are continuing to use the PEACHBERRY Marks, thereby breaching the terms of the Agreement and infringing Pinkberry's rights in the PINKBERRY Marks.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT
## UNDER CALIFORNIA COMMON LAW
### (Against All Defendants)

31. Pinkberry refers to Paragraphs 1 through 30, inclusive, and incorporates the allegations thereof as if herein set forth in their entirety.

32. The Agreement is a valid and enforceable contract.

33. Pinkberry has performed its obligations under the Agreement.

34. Defendants have breached the Agreement by, among other things, their continuing use of the PEACHBERRY Marks in connection with the marketing, advertising, and sale of directly competitive products and services.

35. Upon information and belief, Defendants' conduct has caused, and stands to cause, Pinkberry substantial and immediate irreparable injury, and other damage to Pinkberry's business reputation and goodwill, in an amount presently unknown to Pinkberry, but believed to exceed the minimum liquidated damages amount of five hundred dollars ($500.00) per day, exclusive of interests and costs.

36. Pinkberry has no adequate remedy at law unless Defendants' conduct is enjoined by this Court.

//
//
//
//

## SECOND CLAIM FOR RELIEF

## TRADEMARK INFRINGEMENT

## UNDER 15 U.S.C. § 1114 [LANHAM ACT § 32]

### (Against All Defendants)

37. Pinkberry repeats paragraphs 1 through 36, above, and incorporates the allegations thereof as if herein set forth in their entirety.

38. Pinkberry has used its PINKBERRY Marks in connection with, and to identify the source of the Pinkberry Products and to distinguish those products from similar products offered by other companies, by, and without limitation, prominently displaying the PINKBERRY Marks on Pinkberry's storefronts, employees' uniforms, cups, to-go containers and bags, and advertising and promotional materials distributed throughout the United States, including, without limitation, on its website at www.pinkberry.com.

39. Defendants' use of the PEACHBERRY Marks in connection with the advertising, promotion and sale of directly competitive products and services infringes Pinkberry's registered PINKBERRY Marks and is likely to cause confusion, mistake, or deception of the public as to the identity, source and/or sponsorship of Peachberry's products, restaurants and services.

40. Defendants' use of the PEACHBERRY Marks has been made notwithstanding Pinkberry's well-known and prior-established rights in the PINKBERRY Marks and with both actual and constructive notice of Pinkberry's federal trademark registrations and rights under 15 U.S.C. § 1072.

41. On information and belief, Defendants have intentionally adopted and continued to use the PEACHBERRY Marks with the intent of causing confusion, mistake, or deception of the public as to the identity and source of Peachberry's products, restaurants and services.

42. The above acts by Defendants constitute trademark infringement. By reason of the foregoing, Defendants have violated and will continue to violate Section

32(a) of the Lanham Act, 15 U.S.C. § 1114(1), unless enjoined by the court.

43. On information and belief, Defendants' infringing activities have caused, and unless enjoined by this Court, will continue to cause substantial, immediate, and irreparable injury and other damage to Pinkberry's business, reputation and goodwill.

44. Pinkberry has no adequate remedy at law unless Defendants' infringing conduct is enjoined by this Court.

## THIRD CLAIM FOR RELIEF
## UNFAIR COMPETITION
## UNDER 15 U.S.C. § 1125(A) [LANHAM ACT § 43(A)]
**(Against All Defendants)**

45. Pinkberry repeats paragraphs 1 through 44, above, and incorporates the allegations thereof as if herein set forth in their entirety.

46. Defendants' use of the PEACHBERRY Marks in connection with the advertising, promotion and sale of directly competitive products constitutes unfair competition under to 15 U.S.C. § 1125(a).

47. Defendants' use of the PEACHBERRY Marks is likely to cause confusion, mistake, or deception among consumers as to whether Defendants are affiliated, connected or associated with Pinkberry, and as to whether Pinkberry is the source of Defendants' products and commercial activities or has sponsored or approved them.

48. Defendants' unfair competition has caused and will continue to cause irreparable injury and other damage to Pinkberry's business, reputation and goodwill in its PINKBERRY Marks for which Pinkberry has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN
## UNDER 15 U.S.C. § 1125(A) [LANHAM ACT § 43(A)]

(Against All Defendants)

49. Pinkberry repeats paragraphs 1 through 48, above, and incorporates the allegations thereof as if herein set forth in their entirety.

50. Defendants' PEACHBERRY Marks are such colorable imitations and copies of the PINKBERRY Marks that Defendants' use thereof in connection with directly competitive products and services is likely to cause confusion, mistake, or deception as to whether Defendants are affiliated, connected, or associated with Pinkberry, and as to whether Pinkberry is the source of Defendants' products, services, or commercial activities or has sponsored or approved them.

51. Defendants' use of the PEACHBERRY Marks is a false designation of the origin of Defendants' products, services and commercial activities and/or a false or misleading representation concerning such products, services and commercial activities under 15 U.S.C. § 1125(a).

52. As a direct and proximate result of the violations identified herein, Pinkberry has been injured in its business and property. Pinkberry has suffered damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
### UNFAIR COMPETITION
### UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE
### § 17200, *et seq.*
### (Against All Defendants)

53. Pinkberry repeats paragraphs 1 through 52, above, and incorporates the allegations thereof as if herein set forth in their entirety.

54. Defendants' activities as stated herein constitute unfair competition and an infringement of Pinkberry's common law trademark rights in the PINKBERRY Marks in the State of California.

55. Pursuant to California Business and Professions Code § 17203, Pinkberry

is entitled to preliminary and permanent injunctive relief ordering Defendants to cease this unfair competition, as well as disgorgement of all of Defendants' profits associated with this unfair competition.

### SIXTH CLAIM FOR RELIEF
### INJURY TO BUSINESS REPUTATION
### UNDER CALIFORNIA COMMON LAW
**(Against All Defendants)**

56. Pinkberry repeats paragraphs 1 through 55, above, and incorporates the allegations thereof as if herein set forth in their entirety.

57. Defendants' use of the PEACHBERRY Marks injures and creates likelihood of injury to Pinkberry's business reputation because persons encountering Defendants' products and services will be misled into believing that Pinkberry is affiliated with or related to Defendants, and any adverse reaction by the public to Defendants, the quality of Defendants' products, or the nature of their business will injure the business reputation of Pinkberry and the goodwill that Pinkberry has enjoyed and enjoys in connection with its PINKBERRY Marks.

### SEVENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(Against All Defendants)**

58. Pinkberry repeats paragraphs 1 through 57, above, and incorporates the allegations thereof as if herein set forth in their entirety.

59. As a result of their conduct, Defendants have been unjustly enriched at the expense of Pinkberry and the law thereby implies a contract by which Defendants must pay to Pinkberry the amount by which, in equity and good conscience, Defendants have been unjustly enriched at Pinkberry's expense.

**WHEREFORE**, Pinkberry seeks judgment against Defendants as follows:

1. That Defendants and their agents, officers, servants, employees, representatives, licensees, franchisees, successors, assigns, attorneys and all other persons who are acting in concert or participation with any of them, and each of them, be preliminarily and permanently enjoined from any further use of the PEACHBERRY Marks or any other trademark, trade name or other designation that is confusingly similar to the PINKBERRY Marks;

2. That Defendants and their agents, officers, servants, employees, representatives, licensees, franchisees, successors, assigns, attorneys and all other persons who are acting in concert or participation with any of them, and each of them, be preliminarily and permanently enjoined from any further acts of unfair competition against Pinkberry;

3. That Defendants be required to file with the Court and serve on Pinkberry within thirty (30) days after entry of the injunction, a declaration under oath setting forth in detail the manner and form in which each of the Defendants has complied with the injunctions;

4. That, pursuant to 15 U.S.C. § 1117, Defendants be held liable for all damages suffered by Pinkberry resulting from the acts alleged herein;

5. That Pinkberry receive an award in the amount by which Defendants have been unjustly enriched;

6. That, pursuant to 15 U.S.C. § 1117, Defendants be compelled to account to Pinkberry for any and all profits derived by Defendants from their illegal acts complained of herein;

7. That, pursuant to California Business and Professions Code § 17203, Defendants be compelled to pay restitution and disgorge their ill-gotten gains.

8. That Defendants be ordered pursuant to 15 U.S.C. § 1118 to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, advertisement,

menus, banners, or the like in possession or custody, or under the control of either Defendant bearing any of the PEACHBERRY Marks;

9. That the Court declare this action to be an exceptional case and award Pinkberry its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

10. That Pinkberry be awarded fees and costs in accordance with the terms of the Agreement;

11. That Pinkberry be awarded liquidated damages in the amount of five hundred dollars ($500) per day in accordance with the Agreement;

12. That the Court grant Pinkberry any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117 and/or under state law; and

13. For such other and further relief that the Court deems just and proper.

DATED: September 10, 2008

REED SMITH LLP

By /s/ Henry C. Wang
Henry C. Wang

*Attorneys for Plaintiff*
PINKBERRY, INC.

DOCSLA-15650238